IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARMEN M. COLLAZO-HUERTAS**,

 Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

 Defendant.

Civil No. 19-1705 (BJM)

**OPINION AND ORDER**

 Carmen M. Collazo-Huertas ("Collazo") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Collazo contends that the administrative law judge ("ALJ") improperly evaluated the medical evidence and erred in making the residual functional capacity ("RFC") determination, specifically as to Collazo's use of a cane to ambulate. Docket No. ("Dkt.") 19. The Commissioner opposed. Dkt. 22. This case is before me by consent of the parties. Dkt. 20. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

 After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could

justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's RFC and determines at step four whether the impairments prevent the claimant from doing the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of her RFC, as well as her age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. *Santiago v. Secretary of Health &*

*Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of his insured status, or her date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript.

Collazo was born on April 30, 1957, does not understand the English language (communicates in the Spanish language), completed her GED, and worked as a janitor, agricultural laborer, construction worker, and home attendant. Collazo applied for disability insurance benefits on July 1, 2015, claiming to have been disabled since November 18, 2014 (onset date) at age 57[1] due to herniated lumbar and cervical discs and muscle spasms, carpal tunnel syndrome, right leg neuropathy, and emotional conditions (major depression and panic attacks). Collazo met the insured status requirements of the Act through December 31, 2019. Tr. 22, 28, 40-41, 48, 68, 325, 475, 494-496.

**Physical conditions:**

*State Insurance Fund ("SIF")[2]/Industrial Commission of Puerto Rico ("ICPR")*

At the initial interview (nurse's notes) on January 3, 2011, Collazo reported feeling strong low back pain after suffering a work accident the day prior. Notes indicate that she was observed walking with difficulty and assisted by a companion and remained standing during the interview. Tr. 90, 580. She was referred to an occupational doctor, and medications and physical therapy with a cane were prescribed. Tr. 67, 87-89, 91, 573-574, 579, 581. The spine x-rays taken that day suggested the presence of cervical and lumbosacral muscle spasms, slight spondylolisthesis at the C3-C4 and C4-C5 levels, and minimal deviation. Tr. 630-632. Collazo was injected with Toradol and Norflex in the following days. Tr. 142, 612. A January 2011 lumbosacral spine MRI showed

---

[1] Collazo was considered to be of advanced age (Tr. 48), and "[w]e consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." 20 C.F.R. 404.1563(e).

[2] Most handwritten notes are illegible. Translations of those pages are essentially in blank.

straightening of the normal curvature, mild osteophyte formations and mild hypertrophy of the apophyseal joints, mild central canal stenosis secondary to a mild posterior disc bulge at the L4-L5 level, and mild posterior disc bulge without canal stenosis at the L5-S1 level. Tr. 629.

      Collazo's cervical and lumbar back pain, muscle spasms, and limited range of motion ("ROM") continued throughout 2011. Tr. 88-143, 580-613. In March 2011, Collazo was observed arriving with a cane. She was injected with Kenalog and treatment went well. Tr. 141, 611. In April 2011, Collazo also arrived walking with a cane. Tr. 608. An April 2011 cervical spine MRI revealed straightening of the normal curvature, generalized osteophyte formations and disc desiccation with narrowing of the intervertebral disc spaces, and mild posterior discs bulges with mild central canal stenoses. Tr. 628.  In June 2011, Collazo had back muscle tenderness, but full strength and her stride was normal. Tr. 127, 599. An electromyography showed carpal tunnel syndrome. Tr. 799. In July 2011, an electromyographic examination of the upper and lower limbs showed mild left carpal tunnel syndrome and no evidence of cervical or lumbosacral radiculopathy. Tr. 626-627. Upper and lower extremities were normal in October 2011. Tr. 128, 602. In November 2011, Collazo was observed walking without difficulty and unassisted, but felt moderate back and neck pain that traveled to both her arms and hands. Tr. 121, 593. Collazo was diagnosed with a cervical-dorsal-lumbosacral strain and prescribed medications (pills and injectable Decadron, Norflex, Relafen) and the use of a cane.[3] Tr. 122, 594. In December 2011, notes indicate that she still felt pain. Tr. 597.

      In May 2012, Collazo's pain was intense (Tr. 107, 109, 587-588) but she walked without difficulty. Tr. 145, 615. In July 2012, her upper and lower extremities were normal, and pain was moderate. Tr. 111, 589. In August 2012, she felt less cervical and lumbar pain with limited ROM. Tr. 115, 591.

      Dr. Peter Psarras Castro, ICPR surgeon, evaluated Collazo on October 1, 2013 and found neck pain to the touch with diminished ROM in the neck and shoulders. Upper extremities were normal. Hands showed no atrophy. Flexion test was negative, but Tinel and Phalen tests were positive for the medial carpal bilateral. Hand strength and cutaneous palm sensation were diminished, but she could squeeze and make a fist. Dr. Psarras diagnosed cervicalgia, cervical compression, and bilateral carpal tunnel syndrome. Tr. 288, 798.

---

[3] The translation at Tr. 122 under the "VI. Treatment" section did not pick up the Spanish word "Bastón" for cane found at Tr. 594, only stating "[illegible]."

Dr. Jorge Dávila-Pérez, ICPR neurosurgeon, evaluated Collazo on October 17, 2013. Her main complaint was pain, cramps, numbness, and tingling in the lumbar, dorsal, and cervical regions which radiated to her right shoulder, arm, hip, and leg. Tr. 289, 799. Dr. Dávila noted marked back spasms and pain to touch in the trapezius and paravertebral muscles. Collazo's overall motor system showed good muscle tone without atrophy. Head, arm, and trunk ROM were limited. Dr. Dávila diagnosed cervical dorsal lumbar myofascial syndrome, bulging of the cervical and lumbar discs, and carpal tunnel syndrome. Dr. Dávila found no surgically reparable injury. Tr. 290, 800.

Notes from 2011 to 2013 also contain evidence of depression symptoms and treatment. Tr. 144-155, 162-175, 614-625, 633-646. Dr. Luis Toro, ICPR psychiatrist, evaluated Collazo on September 26, 2013 and diagnosed major depression secondary to her cervical and lumbar conditions, with a workplace accident as stressor and a Global Assessment of Functioning ("GAF")[4] score of 60-65. Tr. 286-287, 796-797.

On Abril 22, 2014, the SIF administratively discharged Collazo, finding that she had benefitted from treatment, with marked improvement and no new compensable residual disabilities other than a compensation she had already been awarded for her back. Tr. 283, 793, 799. Collazo posteriorly appealed this decision.

A March 24, 2015 nerve study results were normal. Tr. 647-648. A September 2015 abdominal sonogram revealed small hepatic cysts.

A lumbar spine MRI report dated May 23, 2018 (performed after the ALJ rendered his decision) indicates that Collazo had mild degenerative changes and disc disease, most severe at the L4-L5 level. Tr. 13.

---

[4] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" *Hernandez v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013)(*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)). "The GAF score range between 41 and 50 is described as '[s]erious symptoms … OR any serious impairment in a social, occupational, or school functioning …'" *Id*. at f.n. 2. "A GAF score of 61-70 indicates: 'Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.' DSM-IV at 34."*Lopez v. Colvin*, No. 15-cv-30200-KAR, 2017 U.S. Dist. LEXIS 49183, at f.n. 5 (D. Mass. Mar. 31, 2017).

Collazo v. Commissioner of Social Security, Civil No. 19-1705 (BJM)                                                                 6

*Centro San Cristóbal*

Treatment notes date from May 2012 to November 2013. Most handwritten notes in this record are illegible. Collazo complained of back pain and neck pain and had difficulty walking. Collazo was diagnosed with lumbalgia and lumbar radicular pain syndrome. She was prescribed medication but refused to take it because it made her sleepy. Tr. 267-276, 779-787.

*Consejo de Salud de Puerto Rico/Med Centro, Inc.*

Collazo was treated with medications from June 2015 to July 2017 for abdominal pain and a hepatic cyst. Tr. 734-744, 801-813.

Three physical examinations performed between June and July, 2015, show that all systems were normal, but for the abdominal pain. Notably, as to her musculoskeletal system, she showed no arthralgias, no soft tissue swelling, no localized joint swelling, and no localized joint stiffness. She also showed no neurological or psychological symptoms. Tr. 735-736, 739-740, 742-743.

Notes from June, July, and November 2016 indicate she did not have abdominal pain and otherwise normal physical systems. In June, she experienced right arm and leg pain and depression symptoms.  In November 2016 she felt pain in her right leg with numbness and tingling. Tr. 805-813.

*Ponce School of Medicine, APS Clinics, INSPIRA, Hospital San Juan Capestrano*

Collazo was treated with medications for major depressive disorder. The record contains treatment notes from March 2013 to June 2015 from the Ponce School of Medicine (Tr. 178-200, 650-703), from October 9, 2015 from APS Clinics (Tr. 208-217, 713-722), from July 2016 to November 2017 from INSPIRA (Tr. 225-266, 304-323, 747-778, 817-832), and a partial hospitalization certification from Hospital San Juan Capestrano from February 2017 (Tr. 814).

Collazo makes no arguments regarding her mental condition. Briefly, I note that in sum Collazo was cooperative, calm, and oriented. Her mood was euthymic, depressed and anxious. She had no cognitive difficulties. Her affect was appropriate. Her thought process was coherent, logical, and intact, and she had no suicidal, homicidal, or psychotic thought content. Her insight, judgment, and reliability were mostly good. Her GAF score was 65. Tr. 210, 226-265, 304-225, 650-703, 715-716, 748-778, 817-832. Her progress was stable. Tr. 209, 714.

Collazo v. Commissioner of Social Security, Civil No. 19-1705 (BJM)                                              7

***Procedural history:***

Collazo applied for disability benefits on July 1, 2015, claiming major depression and panic attacks, herniated lumbar and cervical discs, carpal tunnel in both hands, right leg neuropathy, and back muscle spasms. Tr. 325, 339.

Dr. Roberto Irizarry, consultative clinical psychologist, evaluated Collazo on October 8, 2015 (Tr. 705-712), and assessed that her prognosis was moderate. Her emotional state was co-related to her physical conditions, and as long as her physical conditions persisted, so would her emotional state, and that she could decompensate in a stressful environment. She was oriented in time, place, person, and circumstance. Her insight, social judgment and attention and concentration levels were adequate. She could handle funds. Tr. 712.

Dr. Zaida Boria, consultative neurologist, evaluated Collazo on October 13, 2015 (Tr. 723-732), and diagnosed lumbar musculoskeletal pain with ROM restrictions and depression. Tr. 726. Muscle tone, reflexes, and strength were normal. Collazo exhibited no atrophy in her hands or extremities, and could pinch, grasp, and write. Tr. 725-726. Dr. Boria noted that "[p]atient walks with a cane held with right hand. She can walk without it. No limp. Able to stand over heels and toes." Tr. 725. Dr. Boria assessed that Collazo could sit, stand, walk, travel, and handle and lift common objects. Tr. 726. A cervical spine x-ray prepared for Dr. Boria's evaluation revealed degenerative vertebral and disc disease with cervical spasm. A lumbosacral spine x-ray revealed mild osteoarthritis with lumbar spasm. Tr. 732.

Dr. Cristina Ortiz, non-examining consultant, assessed on October 22, 2015 that, as per the medical evidence in the record, Collazo's back condition was not severe and had no more than a minimal effect in Collazo's ability to perform basic work activities. Tr. 331. Dr. Sydnia Rosado assessed that the evidence in record supported a moderate severity. Collazo was depressed but able to complete a normal workday dealing with simple and detailed work instructions. Tr. 333.

The claim was denied initially on October 23, 2015, with a finding that Collazo's physical conditions were not severe and did not prevent her from working. A finding about Collazo's capacity to do prior relevant work was not made (Tr. 336) but it was determined that she could do other jobs in spite of her limitations, for which there existed significant number of jobs in the national economy, such as surveillance system monitor, table worker, and assembler. Tr. 68, 331, 336-337, 345, 353-354.

Collazo requested reconsideration (Tr. 358-359), claiming that her mental condition had worsened. Tr. 80, 340, 515. Dr. Pedro Nieves and Dr. Jesus Soto both affirmed the physical and mental assessments, respectively, at the initial level as written. Tr. 345-350, 746.

On March 14, 2016, the claim was denied on reconsideration, affirming the initial determination, and with a finding that the maximum sustained work capability Collazo could perform was heavy or very heavy work. Tr. 72, 345-346, 351, 360.

At Collazo's request (Tr. 362), a video hearing before ALJ Gerardo Picó was held on February 8, 2018.[5] Tr. 34-57. Collazo did not claim new conditions or changes to her existing conditions. Tr. 528.

Collazo testified that she worked in maintenance for seven or eight years, in agriculture planting and picking coffee for a couple of years, in construction for a year, as a teacher's helper for six months, and taking care of a disabled person for a long period of time. She testified that she was forced to stop working because her back impeded her from doing certain tasks. She was referred for treatment with the SIF because while taking out large trash bags her back spasmed, and for a leg and knee condition. At the SIF, she was diagnosed with carpal tunnel syndrome on both hands and was granted disability for her hands and back. Her primary doctor prescribed medications. She's had no surgeries or blocks performed. She was provided with a cane at the SIF and claimed needing to use it at all times. She felt constant pain which radiated to her arms, and her hands would go numb. She could raise her hands but felt pressure in her cervical area when doing so. Her legs and feet would also go numb and would swell if she sat for too long. Her waist would hurt while standing. She also developed an emotional condition after her son died and was treated by a psychiatrist for major severe depression with psychosis and anxiety. Tr. 37-47.

Vocational expert ("VE") Dr. Ariel Cintrón testified the claimant's vocational profile is that of a person aged sixty years and seven months, and fifty-seven on the onset date, close to retirement, who finished her GED and worked in the following jobs: hospital cleaner, farm worker, construction worker, and home attendant. The hospital cleaner job and the farm worker II job are described in the Dictionary of Occupational Titles ("DOT") as having a medium physical exertion

---

[5] Collazo, represented by Attorney David Torres, appeared in Ponce, Puerto Rico. ALJ Picó presided from Columbia, Missouri.

and a Special Vocational Preparation ("SVP") of two, unskilled,[6] routine, and repetitive. The construction worker II job was very heavy, with an SVP of two, unskilled, routine, repetitive. The home attendant job was medium, SVP of three, low semi-skilled work. Tr. 48.

The ALJ asked the VE if a hypothetical person with the same vocational profile as the claimant and limited to simple tasks could do those jobs, and the VE answered that she could do all the jobs but for the home attendant one because it was semi-skilled. The ALJ further asked if such a person could perform those jobs if she could not be in contact with the public but could frequently interact with coworkers and supervisors. The VE answered that she could. Tr. 49.

Counsel asked the VE if a hypothetical person that can only do simple tasks, does not speak English, stand for one hour and sit for one hour in an eight-hour workday, and can have no contact with the public but can interact occasionally with coworkers and supervisors, could do past work. The VE answered that she could not perform those jobs on a sustained basis because they would be less than sedentary in terms of time to exchange positions. When asked if such a person could do these jobs with a cane, the VE answered no because the jobs would then be considered heavy instead of medium. Tr. 49-50. Counsel also asked if such a person could work if she additionally could not bend or crouch frequently, could not stand or sit for two hours, and could lift and carry five pounds frequently. The VE answered no because those residuals are less than sedentary. Tr. 56.

The ALJ asked counsel to clarify what exhibit shows that a cane was prescribed. Tr. 51-57. Counsel submitted a brief to the ALJ indicating that the cane prescription was contained in the SIF initial interview form at Exhibit 1F. The exhibit attached to the brief is a SIF document dated January 3, 2011, with four nurses' signatures in different sections, one section of which contains a note that reads in the English translation at Tr. 87 "physical therapy for cane." Tr. 87, 573-574, 833-834.

On May 18, 2018, the ALJ found that Collazo was not disabled under sections 216(i) and 223(d) of the Act. Tr. 14-33. The ALJ sequentially found that Collazo:

(1) had not engaged in substantial gainful activity since her alleged onset date (Tr. 22);

---

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength." 20 C.F.R. § 404.1568(a).

Collazo v. Commissioner of Social Security, Civil No. 19-1705 (BJM)                                                  10

(2) had severe impairments which caused more than minimal functional limitations in her ability to perform basic work activities (SSR 85-28): cervical and lumbar degenerative discogenic disease and major depressive disorder (Tr. 22);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526), including sections 1.04 and 12.04 (Tr. 23); and

(4) could perform past relevant work because Collazo retained the RFC to perform a full range of medium work.[7] She could lift, carry, push, and/or pull 25 pounds frequently and 50 pounds occasionally; sit for 6 hours and stand and/or walk for 6 hours in an 8-hour workday; and stoop and crouch frequently. She could also perform simple tasks that required frequent contact with coworkers and supervisors, but no contact with the public. (Tr. 24).

On May 21, 2019, the Appeals Council denied Collazo's request for review (Tr. 471-474), finding that the new evidence submitted did not show a reasonable probability of changing the outcome of the decision and rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-2. The present complaint followed. Docket No. 2.

**DISCUSSION**

This court must determine whether there is substantial evidence to support the ALJ's determination at step four in the sequential evaluation process that Collazo could perform past relevant work, thus rendering her not disabled within the meaning of the Act. Collazo asserts that the RFC assessment is unsupported by substantial evidence or sufficient explanation, and that the ALJ, a lay person, erroneously substituted his opinion for the medical opinions in the record concerning her mental and physical impairments, and improperly evaluated her need to use a cane to walk.

RFC is an administrative assessment of a claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, to be determined solely by the ALJ. 20 C.F.R. §§ 404.1520(e), 404.1527(d)(2), 404.1545(a)(1), and 404.1546; SSR 96-8p. An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).

The ALJ here determined that Collazo retained the RFC to perform a full range of medium work and perform simple tasks that required frequent contact with coworkers and supervisors, but no contact with the public. The ALJ used this RFC in the hypothetical question posed to the VE. The ALJ is required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1).

In formulating the RFC, the ALJ must weigh all the evidence and make certain that the ALJ's conclusion rested upon clinical examinations as well as medical opinions. *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 28, 224 (1st Cir. 1981). An expert's RFC assessment is required because generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Manso–Pizarro*, 76 F.3d at 17 (per curiam); *see also Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record."). The ALJ may not substitute his "own impression of an individual's health for uncontroverted medical opinion." *Carrillo Marin v. Sec'y of Health & Human Servs.*, 758 F.2d 14, 16 (1st Cir. 1985). "This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils*, 921 F.2d at 329.

I note that the ALJ's decision contains a lengthy summary of the treating, examining, and consultative opinions the ALJ considered, and a specific statement of the reasoning behind the

weight assigned, which I find was sufficient to give the court notice of the weight given to the medical opinions and constitutes substantial evidence supporting the ALJ's determination. Collazo's claim that the ALJ did not provide sufficient explanation is meritless. I also note that the ALJ's RFC assessment is supported by the record evidence, as discussed below, and is more restrictive than the ones offered by the non-examining state agency physicians Dr. Ortiz and Dr. Rosado, who respectively assessed that Collazo's back condition was not severe and had no more than a minimal effect in Collazo's ability to perform basic work activities, and that Collazo's depression was of moderate severity and she was able to complete a normal workday dealing with simple and detailed work instructions. Tr. 331, 333. Here, the ALJ obtained RFC assessments from medical experts and, along with other evidence in the record, made his RFC determination. Collazo's claim that the ALJ as a lay person substituted his opinion for the medical opinions is also without merit.

Collazo makes no arguments nor cites transcript evidence regarding her mental condition, and I therefore deem this argument waived.[8] But, briefly, as to the mental limitations in the ALJ's RFC finding, because it is pertinent to the RFC finding and substantial review, I note that the evidence in the record supports a finding that Collazo could perform simple tasks that required frequent contact with coworkers and supervisors, but no contact with the public.

Collazo was diagnosed with depression secondary to her physical conditions. The treatment record shows that while her mood was depressed and anxious, she had no cognitive difficulties. Her affect was appropriate; her thought process was coherent, logical, and intact; and her insight, judgment and reliability were good. Her GAF score was indicative of mild symptoms. Dr. Irizarry, consultative clinical psychologist, assessed that Collazo's emotional state was moderate and co-related to her physical conditions, and as long as her physical conditions persisted, so would her emotional state and that she could decompensate in a stressful environment. Otherwise, she was oriented in time, place, person, and circumstance. Her insight, social judgment and attention and concentration levels were adequate. She could handle funds. Tr. 712. Dr. Rosado, non-examining physician, assessed that the evidence in record supported a moderate severity and that Collazo was depressed but able to complete a normal workday dealing with simple and

---

[8] *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Collazo v. Commissioner of Social Security, Civil No. 19-1705 (BJM)                                    13

detailed work instructions. Tr. 333. Dr. Soto also noted that, based on the medical evidence, Collazo was depressed but able to perform simple and detailed work instructions and complete a normal workday. Tr. 347, 350. The VE testified that Collazo could perform her previous jobs except the home attendant job because they were unskilled, meaning they needed little or no judgment to do simple duties, as defined in 20 C.F.R. § 404.1568(a).

As to Collazo's physical impairments, there is substantial longitudinal evidence that Collazo suffered from a severe back condition, which was acknowledged by the ALJ at Step Two. Collazo's only argument regarding her physical limitations is that the ALJ improperly addressed her need for a cane to ambulate and points to a sole piece of evidence in the record, what she argues is a SIF cane prescription. The VE testified that the hypothetical person would not be able to perform Collazo's previous jobs with a cane because they would be considered heavy instead of medium work. Tr. 50.

I reviewed the transcript pages Collazo cites at Docket No. 19 page 4 "(Tr. 141, 574, 581, 594, 608)" and they pertain to SIF evidence between January to April 2011, when she began treatment for neck and back pain following a work accident. Record evidence at Tr. 594 in the Spanish language shows that on January 3, 2011, medications and a cane were prescribed. Unfortunately, that didn't make it through to the translation at Tr. 122 under the "VI. Treatment" section, which states in the Spanish copy at Tr. 594 the word "Bastón" for cane. Also on January 3, 2011, as evidenced at Tr. 574 and its translation at Tr. 87, Collazo was referred to "physical therapy for cane." Tr. 87. And Collazo was observed walking with a cane during this time period. Collazo also testified at the hearing that she was provided with a cane at the SIF and claimed needing to use it at all times.

I did not find other evidence in the treatment records pertaining to a cane prescription or use of a cane to ambulate. The rest of the 2012-2013 SIF record shows that Collazo continued treatment for her back pain and muscle spasms and had ROM limitations but was improving and ambulated without the assistance of a cane. By June 2011, her stride was normal, and in November 2011 and May 2012, she was observed walking without difficulty and unassisted. Also, during 2012, a reduction in the self-reported intensity of pain is evident. Upper and lower extremities were normal, and she had good muscle tone without atrophy. No surgery was recommended. Tr. 589, 591 599, 593, 615, 798, 800. Evidence from Centro San Cristóbal, also between 2012 and 2013, indicates that Collazo complained of back and neck pain and had difficulty walking but

refused to take her medications. Tr. 783. Evidence from the Consejo de Salud de Puerto Rico from 2015 and 2016 shows mostly normal physical systems. Tr. 735-743, 805-813.

Other evidence found in the record regarding the use of a cane belongs to Dr. Boria, the consultative neurologist, whose opinion the ALJ gave great weight to. Dr. Boria noted in 2015 that "[p]atient walks with a cane held with right hand. She can walk without it. No limp. Able to stand over heels and toes." Tr. 725. Dr. Boria diagnosed lumbar musculoskeletal pain with restrictions in range of movement and depression. Tr. 726. Otherwise, she presented normal muscle tone, reflexes, and strength and had no involuntary movements. Collazo also showed no atrophy of hands or extremities, and could pinch, grasp, and write. Tr. 725-726. Dr. Boria assessed that Collazo could sit, stand, walk, travel, and handle and lift common objects. Tr. 726. Dr. Ortiz, non-examining consultant, reviewed the medical record and assessed that Collazo's back condition was not severe and had no more than a minimal effect in Collazo's ability to perform basic work activities. Tr. 331.

Treatment and consultative records also show that Collazo had good use of her hands. Industrial Commission evidence from 2013 from Dr. Psarras shows that even though Collazo was diagnosed with carpal tunnel syndrome and had diminished hand strength, her upper extremities were normal, her hands showed no atrophy, and she could squeeze and make a fist. Tr. 798. Evidence from Consejo de Salud de Puerto Rico between 2015 and 2016 indicates that pain symptoms periodically persisted but otherwise her physical systems were normal on examination. Tr. 735-743, 805-813.

Furthermore, counsel asked the VE if a person who could stand for one hour and sit for one hour in an eight-hour workday, bend or crouch frequently, could not stand or sit for two hours, and could lift and carry five pounds frequently, could do past work. The VE answered that she could not perform those jobs on a sustained basis because they would be less than sedentary in terms of time to exchange positions. Tr. 49-50, 56. I found no substantial evidence on the record that would support these additional limitations.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding. The decision is therefore affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

  **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of July, 2021.

              *S/ Bruce J. McGiverin*
              BRUCE J. MCGIVERIN
              United States Magistrate Judge